1 | **SCHULZ & SCHULZ, P. C.**
Harry J. Schulz, III (CA SBN 205625)
2 | 310 N. Harborth Avenue
P.O. Box 580
3 | Three Rivers, TX 78071
Telephone: (361) 786-2545
4 | Facsimile: (361) 786-2543

5 | Attorneys for Plaintiff
NeuroSigma, Inc.
6 |

7 |

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 |

11 | NEUROSIGMA, INC., a Delaware
corporation,                                        ) Case No.
12 |                                                  )
                        Plaintiff,                   ) NEUROSIGMA, INC.'S COMPLAINT
13 |                                                  ) FOR BREACH OF CONTRACT, BAD
            v.                                        ) FAITH AND DECLARATORY
14 |                                                  ) RELIEF
   SCOTTSDALE INSURANCE                               )
15 | COMPANY, an Ohio insurance                       ) **DEMAND FOR JURY TRIAL**
   company,                                           )
16 |                                                  )
                        Defendant.                    )
17 |                                                  )
                                                      )
18 |                                                  )
   _____          )
19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

Plaintiff NeuroSigma, Inc. ("NeuroSigma") complains and alleges as follows:

## JURISDICTION AND VENUE

1.      This action is an insurance coverage litigation arising out of Defendant Scottsdale's unreasonable refusal to pay for defense costs and defend NeuroSigma against the counterclaims asserted in the arbitration entitled *NeuroSigma, Inc. v. De Salles, et al.,* filed with the Los Angeles office of the American Arbitration Association under case number Case No. 50 193 T0077813 (the "*De Salles* Arbitration").  This is a Complaint for damages and declaratory relief arising from Defendant Scottsdale's wrongful delay, refusal and denial of benefits due under a policy of insurance issued to NeuroSigma.

2.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between and among NeuroSigma and Defendant Scottsdale.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.      Venue is proper in this Court under 28 U.S.C. § 1391 in that Defendant Scottsdale is subject to personal jurisdiction in this district at the time the action is commenced, and because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this district.  Specifically, the underlying claims against NeuroSigma were made in this district and the underlying arbitration for which Defendant Scottsdale wrongfully denied coverage was filed in an arbitration forum located in this district.  Moreover, Defendant Scottsdale's performance under the insurance policy at issue is due in this district.

## PARTIES

4.      NeuroSigma is, and at all times herein mentioned was, a corporation organized and existing under the laws of Delaware, with its principal place of business in California.

5.      NeuroSigma is informed and believes, and based thereupon alleges, that Defendant Scottsdale Insurance Company ("Scottsdale") is, and at all times

herein mentioned was, a corporation organized and existing under the laws of Ohio, with its principal place of business in Arizona, and was authorized to do business as an insurance company in California.

### FACTUAL BACKGROUND

6.     In exchange for valuable consideration, Defendant Scottsdale provided policies of insurance to NeuroSigma, including without limitation, Business And Management Indemnity insurance under written insurance policy EKS3074615 (effective September 17, 2012 to September 17, 2013) (the "2012-2013 Scottsdale Policy").

7.     At all times herein mentioned, NeuroSigma paid all premiums on the 2012-2013 Scottsdale Policy as they became due and payable, and has duly complied with all material conditions in all such policies, except for those conditions which have been waived or excused by Defendant Scottsdale.

8.     The 2012-2013 Scottsdale Policy insures NeuroSigma against, among other things, "Loss of the Insureds which the Insureds have become legally obligated to pay by reason of an Employment Practices Claim first made against the Insureds during the Policy Period…for an Employment Practices Wrongful Act taking Place prior to the end of the Policy Period" (the "EPL Coverage").  Under the EPL Coverage, "Employment Practices Claims" include claims brought by independent contractors for NeuroSigma, but only to the extent such individual performs work or services for or on behalf of NeuroSigma.  "Employment Practices Wrongful Acts" include the "breach of an actual or implied employment contract," and "wrongful discharge or termination of employment, whether actual or constructive."  The EPL Coverage provides that Defendant Scottsdale has the duty to defend NeuroSigma and other insureds against, *inter alia*, any arbitration proceeding seeking such damages or other relief.  The EPL Coverage is subject to a $1,000,000 limit of liability for all Loss, an additional $1,000,000 limit of liability for all Costs, Charges and Expenses (including defense costs), and a $2,000,000

1  maximum aggregate of liability for all EPL Coverage, all subject to a $7,500 self-

2  insured retention for each Employment Practices Claim.

3       9.    The 2012-2013 Scottsdale Policy also insures NeuroSigma against,

4  among other things, "Loss of the Company which the Company becomes legally

5  obligated to pay by reason of a Claim first made against the Company during the

6  Policy Period…for any Wrongful Act taking place prior to the end of the Policy

7  Period" (the "D&O Coverage").  Under the D&O coverage, "Wrongful Acts"

8  include any "actual or alleged error, omission, misleading statement, misstatement,

9  neglect, breach of duty or act allegedly committed or attempted

10  by…[NeuroSigma]."  The D&O Coverage provides that Defendant Scottsdale has

11  the duty to defend NeuroSigma and other insureds against, *inter alia*, any arbitration

12  proceeding seeking such monetary damages or non-monetary or injunctive relief.

13  The D&O Coverage is subject to a $3,000,000 limit of liability for all Loss, an

14  additional $1,000,000 limit of liability for Loss under Insuring Clause A.1. (i.e.,

15  unindemnified Loss of D&Os), and a $4,000,000 maximum aggregate of liability for

16  all D&O Coverage.  There is no self-insured retention applicable to the D&O

17  coverage.

18       10.    NeuroSigma timely provided notice of the *De Salles* Arbitration

19  counterclaims to Defendant Scottsdale, not later than September 15, 2013.

20       11.    The counterclaims asserted against NeuroSigma in the *De Salles*

21  Arbitration allege, *inter alia*:

22 · Dr. De Salles agreed to "act as an advisor or consultant in the

23     formation of a medical technology company [i.e., NeuroSigma];"

24 · "In addition to his duties as a medical advisor," Dr. De Salles agreed

25     to "lend his prestige and reputation to [NeuroSigma] in its efforts to

26     attract investors and to assist in the development of medical

27     procedures and devices to market on a worldwide basis;"

28

- Dr. De Salles agreed to "recruit and help retain other scientists and medical researchers…to work with NeuroSigma;"
- In exchange for the foregoing services, Dr. De Salles "was offered the opportunity to purchase 50,000 shares of common stock of [NeuroSigma] for $500.00;"
- "[I]n September 2008, [Dr. De Salles] and NeuroSigma entered into the written Stock Purchase Agreement" and Dr. De Salles "purchased 50,000 shares of NeuroSigma common stock;"
- The Stock Purchase Agreement provided that Dr. De Salles was to be "fully vested in all shares after four (4) full years of continuous service" to NeuroSigma;
- The Stock Purchase Agreement further provided that "For purposes of this Agreement, [Dr. De Salles] shall be deemed to remain in service for so long as [Dr. De Salles] continues to actually and physically render services to [NeuroSigma] ... whether as an employee, a nonemployee member of the Board of Directors, or an independent contractor or consultant, solely as determined by and in accordance with the directives of the Board of Directors of [NeuroSigma];"
- On February 24, 2011, NeuroSigma recognized Dr. De Salles by paying him a $25,000 "bonus" for his work on behalf of NeuroSigma;
- In March 2013, Dr. De Salles was notified that "NeuroSigma was totally dissatisfied with all of his service to the company," and that NeuroSigma was repurchasing and cancelling Dr. De Salles' shares of NeuroSigma common stock pursuant to the Stock Purchase Agreement. Dr. De Salles contends that such repurchase and cancellation was "unlawful;" and

- NeuroSigma's "unlawful" repurchase and cancellation of Dr. De Salles' shares of common stock was undertaken "with malice, ill will, evil intent, animus and greed."

12. The *De Salles* Arbitration and related counterclaims continue to be litigated by and among the parties.

13. Despite Defendant Scottsdale's promises to defend NeuroSigma against claims falling within the scope of the EPL Coverage and/or the D&O Coverage in the 2012-2013 Scottsdale Policy, Defendant Scottsdale denied any duty to defend or indemnify NeuroSigma against the *De Salles* Arbitration counterclaims by letter dated November 12, 2013.

14. Three months later, by letter dated February 18, 2014, Defendant Scottsdale reversed its denial as to the D&O Coverage and admitted its duty to defend NeuroSigma against the *De Salles* Arbitration counterclaims, albeit subject to a reservation of rights.  Defendant Scottsdale continued to deny any duty to defend or indemnify NeuroSigma under the EPL Coverage, despite its assertion that the *De Salles* Arbitration counterclaims "appear[] to arise out of the termination of Dr. Salles' services for [NeuroSigma]."

15. The reservation of rights asserted by Defendant Scottsdale in its February 18, 2014 letter included a reservation that:

> Scottsdale shall not be liable for Loss on account of any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving (i) any dishonest, deliberately fraudulent or criminal act of an Insured; provided, however that this exclusion f.i. shall not apply unless and until there is a final judgment against such Insured as to such conduct; or (ii) the gaining in fact of any profit, remuneration or financial advantage to which any Directors and Officers were not legally entitled; provided, however this exclusion f.ii. shall not apply unless and until there is a final judgment against such Directors and Officers as to such conduct. Section C. 1 .f. further

provides that, when f.i. or f.ii. applies, the Insured shall
reimburse Scottsdale for any Costs, Charges or Expenses.
No coverage would be available under the Policy if the
Insured becomes liable for any such wrongdoing, as may
be established by a final judgment.

16.     Because the foregoing reservation, among others, is directed at alleged conduct by the insured that is at issue in the *De Salles* Arbitration counterclaims and the outcome of that issue could be controlled by defense counsel, such reservation(s) resulted in a clear conflict of interest between Defendant Scottsdale and NeuroSigma and created a duty on the part of Defendant Scottsdale to provide and pay independent defense counsel to NeuroSigma under Cal. Civ. Code §2860. Notwithstanding its statutory duty to provide NeuroSigma with independent defense counsel, Defendant Scottsdale has unreasonably refused, and continues to unreasonably refuse to provide independent defense counsel to NeuroSigma.

17.     From and after the date notice of the *De Salles* Arbitration was provided to Defendant Scottsdale, NeuroSigma has incurred, and continues to incur, defense costs that are reasonable and necessary to avoid or at least minimize NeuroSigma's potential liability in connection with the *De Salles* Arbitration counterclaims.  Defendant Scottsdale has been sent all such invoiced defense costs incurred to date, as well as the supporting documentation for such costs.  The defense costs incurred and paid by NeuroSigma in the *De Salles* Arbitration counterclaims exceed the $7,500 self-insured retention applicable to the EPL Coverage, and NeuroSigma has repeatedly requested that Defendant Scottsdale begin to pay any such defense costs pursuant to the EPL Coverage and the D&O Coverage.

18.     Yet, despite having promised to pay all such defense costs and indemnity expenses, and despite having acknowledged its duty to defend NeuroSigma under the D&O Coverage against the *De Salles* Arbitration counterclaims, Defendant Scottsdale has wrongfully delayed, denied and refused,

1  and continues to wrongfully delay, deny and refuse, to pay *even a single penny* of

2  any such defense costs or indemnity expenses.  Consequently, NeuroSigma has been

3  forced to incur or pay millions of dollars out of its own pocket without

4  reimbursement from Defendant Scottsdale, resulting in substantial financial

5  prejudice to NeuroSigma.

6  **FIRST CLAIM FOR RELIEF**

7  **(Breach of Contract – Failure To Defend)**

8  19.     NeuroSigma realleges and incorporates by this reference each of the

9  foregoing Paragraphs of this Complaint as if fully set forth herein.

10  20.     Defendant Scottsdale has breached its contractual obligations under the

11  2012-2013 Scottsdale Policy issued to NeuroSigma, including Defendant

12  Scottsdale's duty to pay the defense costs incurred by NeuroSigma in defending

13  against the *De Salles* Arbitration counterclaims, by, among other things, denying

14  coverage for, delaying, refusing and failing to pay any of NeuroSigma's defense

15  costs incurred with respect to the *De Salles* Arbitration counterclaims, including

16  such defense costs for independent defense counsel.

17  21.     As a direct and proximate result of Defendant Scottsdale's breach of

18  contract as alleged herein, NeuroSigma has been required to incur, agree to pay or

19  pay millions of dollars to respond to and defend against the *De Salles* Arbitration

20  counterclaims without reimbursement.  NeuroSigma has thereby been damaged in

21  an amount to be determined at trial, which damages include, without limitation, all

22  of NeuroSigma's unreimbursed defense costs incurred in connection with

23  responding to and defending against the *De Salles* Arbitration counterclaims,

24  together with interest thereon.

25

26

27

28

## SECOND CLAIM FOR RELIEF

### (Bad Faith)

22.     NeuroSigma realleges and incorporates by this reference each of the foregoing Paragraphs of this Complaint as if fully set forth herein.

23.     Defendant Scottsdale has breached its implied covenant of good faith and fair dealing by, among other things: (1) wrongfully and unreasonably denying its duty to defend NeuroSigma against the *De Salles* Arbitration counterclaims, including by improperly failing and refusing to pay any defense costs incurred by NeuroSigma; (2) compelling NeuroSigma to institute litigation to recover amounts due under the 2012-2013 Scottsdale Policy; (3) failing to adopt and implement reasonable standards for the investigation and handling of NeuroSigma's claim; (4) failing to provide a prompt or reasonable explanation as to why Defendant Scottsdale has not paid any defense costs incurred by NeuroSigma under the 2012-2013 Scottsdale Policy; (5) taking unreasonable positions concerning the coverage provided under the 2012-2013 Scottsdale Policy, including with respect to Defendant Scottsdale's obligation to provide independent defense counsel; and (6) misrepresenting the coverage provided by the 2012-2013 Scottsdale Policy.

24.     As a direct and proximate result of Defendant Scottsdale's breaches of its duties of good faith and fair dealing as set forth above, NeuroSigma has suffered damages, plus interest, together with all of its attorneys' fees and costs incurred in prosecuting this action to seek insurance coverage benefits wrongfully withheld by Defendant Scottsdale.

25.     The unjustified and unreasonable conduct of Defendant Scottsdale was calculated to deprive NeuroSigma of the benefits of their bargain, with resulting harm to NeuroSigma.  Defendant Scottsdale's breaches of its duties of good faith and fair dealing were done with a conscious disregard of NeuroSigma's rights and with the intent to vex, injure or annoy NeuroSigma such as to constitute oppression

1  or malice.  NeuroSigma is therefore entitled to exemplary damages to punish and

2  make an example of Defendant Scottsdale.

3  ### THIRD CLAIM FOR RELIEF

4  **(Declaratory Relief)**

5  26.    NeuroSigma realleges and incorporates by this reference each of the

6  foregoing Paragraphs of this Complaint as if fully set forth herein.

7  27.    An actual controversy has arisen and now exists between NeuroSigma

8  and Defendant Scottsdale regarding whether:  (a) Defendant Scottsdale has a duty to

9  defend NeuroSigma against the *De Salles* Arbitration counterclaims under both the

10 EPL Coverage and the D&O Coverage of the 2012-2013 Scottsdale Policy; (b)

11 Defendant Scottsdale is currently obligated under the 2012-2013 Scottsdale Policy

12 to pay any and all defense costs that will be incurred by NeuroSigma in connection

13 with the *De Salles* Arbitration counterclaims, subject to the respective limits of the

14 EPL Coverage and the D&O Coverage; and (c) Defendant Scottsdale's duty to

15 defend NeuroSigma against the *De Salles* Arbitration counterclaims requires

16 Defendant Scottsdale to provide and pay independent defense counsel to

17 NeuroSigma.

18 28.    A judicial declaration is necessary and appropriate at this time in order

19 to ascertain NeuroSigma's rights to reimbursement of such defense costs and

20 indemnity expenses under the 2012-2013 Scottsdale Policy.  Indeed, given that such

21 defense costs are critical to the defense of the *De Salles* Arbitration counterclaims,

22 such a judicial declaration is urgently needed to enable NeuroSigma to fully present

23 its defenses and to prevent further substantial prejudice to NeuroSigma's interests.

24 NeuroSigma seeks a judicial declaration that:  (a) Defendant Scottsdale has a duty to

25 defend NeuroSigma against the *De Salles* Arbitration counterclaims under both the

26 EPL Coverage and the D&O Coverage of the 2012-2013 Scottsdale Policy; (b)

27 Defendant Scottsdale is currently obligated under the 2012-2013 Scottsdale Policy

28

1  to pay any and all defense costs that will be incurred by NeuroSigma in connection
2  with the *De Salles* Arbitration counterclaims, subject to the respective limits of the
3  EPL Coverage and the D&O Coverage; and (c) Defendant Scottsdale's duty to
4  defend NeuroSigma against the *De Salles* Arbitration counterclaims requires
5  Defendant Scottsdale to provide and pay independent defense counsel to
6  NeuroSigma.

7  ## PRAYER FOR RELIEF

8  WHEREFORE, NeuroSigma prays for judgment against Defendant
9  Scottsdale, as follows:

10  1.     For an expedited declaration that:  (a) Defendant Scottsdale has a duty
11  to defend NeuroSigma against the *De Salles* Arbitration counterclaims under both
12  the EPL Coverage and the D&O Coverage of the 2012-2013 Scottsdale Policy; (b)
13  Defendant Scottsdale is currently obligated under the 2012-2013 Scottsdale Policy
14  to pay any and all defense costs that will be incurred by NeuroSigma in connection
15  with the *De Salles* Arbitration counterclaims, subject to the respective limits of the
16  EPL Coverage and the D&O Coverage; and (c) Defendant Scottsdale's duty to
17  defend NeuroSigma against the *De Salles* Arbitration counterclaims requires
18  Defendant Scottsdale to provide and pay independent defense counsel to
19  NeuroSigma;

20  2.     For compensatory damages, including all of NeuroSigma's
21  unreimbursed defense costs which have been incurred in connection with
22  responding to and defending against the *De Salles* Arbitration counterclaims and
23  any other benefits due under the 2012-2013 Scottsdale Policy;

24  3.     For foreseeable consequential damages, in an amount to be proven at
25  trial;

26  4.     For all other damages proximately caused by Defendant Scottsdale's
27  bad faith, in an amount to be proven at trial;

28  5.     For exemplary and punitive damages;

NeuroSigma, Inc 's Complaint for Breach of Contract, Bad
Faith and Declaratory Relief

6.   For interest as allowed by law;

7.   For NeuroSigma's attorneys' fees and costs of suit in this action; and

8.   For such other and further relief as the Court may deem just and proper.

Dated:  April 10, 2015                     Respectfully submitted,

SCHULZ & SCHULZ, P.C.


By: _____
    Harry J. Schulz, III
    Attorneys for Plaintiff
    NeuroSigma, Inc.

## **JURY TRIAL DEMAND**

1.    NeuroSigma hereby demands trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  April 10, 2015                           Respectfully submitted,

                                                          SCHULZ & SCHULZ, P.C.


By: _____
    Harry J. Schulz, III
    Attorneys for Plaintiff
    NeuroSigma, Inc.

NeuroSigma, Inc 's Complaint for Breach of Contract, Bad
Faith and Declaratory Relief